UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GREATER BOISE AUDITORIUM DISTRICT, an auditorium district organized and operating under the laws of the State of Idaho,<br><br>      Plaintiff,<br><br>v.<br><br>VIEW OPERATING CORPORATION, a Delaware corporation,<br><br>      Defendant. | Case No. 1:24-cv-00534-AKB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is Defendant View Operating Corporation's Motion to Set Aside Default (Dkt. 13). Having reviewed the record and the parties' submissions, the Court finds that the facts and legal argument are adequately presented, and that oral argument would not significantly aid its decision-making process, and it decides the motion on the parties' briefing. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); *see also* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."). For the reasons stated below, the Court hereby grants View Operating Corporation's motion and denies Plaintiff Greater Boise Auditorium District's motion for default judgment as moot.

## I.   BACKGROUND

This action arises from a dispute concerning electrochromic "smart windows" installed at the Boise Centre East convention center in Boise, Idaho. Defendant View Operating Corporation (View) manufactures electrochromic window panels that automatically adjust tint levels in response to light conditions (Dkt. 13-1 at 1). In 2016, Plaintiff Greater Boise Auditorium District

**MEMORANDUM DECISION AND ORDER – 1**

(GBAD) contracted with View to supply seventy-two smart windows for the facility (Dkt. 1 ¶¶ 17–19). Starting in late 2018, GBAD claims that the smart windows began to fail, with thirteen windows experiencing issues such as fogging, bubbling, and other visual obstructions (*id.* ¶¶ 34, 47). Following several unsuccessful attempts to have View remedy the defects, GBAD sent View a demand letter on July 16, 2024, requesting that View pay to uninstall all seventy-two windows, provide replacement windows, cover the cost of disposing of the defective windows, and compensate GBAD for other losses resulting from the defective windows (*id.* ¶ 57). View never responded (*id.* ¶ 58).

On November 4, 2024, GBAD filed this action asserting seven claims related to alleged defects in the windows: Declaratory Judgment, Breach of Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing, Breach of Express Warranty, Breach of the Implied Warranty of Fitness for a Particular Purpose/Merchantability, Products Liability, and Violation of the Idaho Consumer Protection Act (Dkt. 1). GBAD served the summons and complaint on View through its registered agent, CT Corporation System, in Boise Idaho on November 6, 2024 (Dkt. 4; Dkt. 15 at 7). CT Corporation then forwarded the materials via FedEx to View's office in San Jose, California (Dkt. 13-1 at 3).

According to View, the package was received through a shared mailroom in the building where View subleased office space (*id.*). After the 2024 holidays, View's office manager discovered the package and mistakenly forwarded it to the Canton, Michigan home of a View financial consultant, Patrick Randall (*id.*). The package arrived at Randall's residence on January 6, 2025, but Randall had departed for travel to Florida on January 4 (*id.*).

Randall did not discover the package until he returned to Michigan in February 2025 (*id.*). After locating the materials, Randall notified View's Chief Legal Officer, William Krause, who

**MEMORANDUM DECISION AND ORDER – 2**

then became aware of the summons and complaint (*id.*). According to View, its legal department learned of the lawsuit at that time and began investigating the claims and retaining counsel (*id.*).

Unbeknownst to View, GBAD moved for entry of default on December 13, 2024, after View failed to file its answer by the November 27 deadline (Dkt. 6). The Clerk entered default on January 6, 2025 (Dkt. 9). On June 11, 2025, View appeared and filed the present Motion to Set Aside Entry of Default (Dkt. 13). GBAD opposes the motion (Dkt. 15). GBAD subsequently filed a Motion for Default Judgment (Dkt. 19).

## II.    LEGAL STANDARD

Rule 55(c) of the Federal Rules of Civil Procedure provides a court may set aside an entry of default for "good cause shown." In determining whether good cause exists, the Court considers three factors: (1) whether defendant engaged in culpable conduct that led to the entry of default; (2) whether defendant has a meritorious defense; or (3) whether setting aside the entry of default would prejudice plaintiff. *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010). This standard "is disjunctive, such that a finding that any one of these factors is true is sufficient reason for the district court to refuse to set aside the default." *Id.*

The defendant, as the party seeking relief from the entry of default, bears the burden of showing that these factors favor such relief. *Franchise Holding II, L.L.C. v. Huntington Rests. Grp., Inc.*, 375 F.3d 922, 926 (9th Cir. 2004). Default judgments are generally disfavored and "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986); *see also TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 693 (9th Cir. 2001), *overruling recognized by Castro v. C&C Verde LLC*, Nos. 23-15488, 23-16217, 2024 WL 5494392 (9th Cir. Mar. 28, 2025) (emphasizing "the long-standing principle that default judgments are disfavored").

MEMORANDUM DECISION AND ORDER – 3

## III.   ANALYSIS

View maintains that good cause exists to set aside the entry of default (Dkt. 13), while GBAD asserts that View has "no legally sufficient reason for its earlier failure to respond to this lawsuit" (Dkt. 15 at 4).

### A.   Culpable Conduct

The first factor considers the defendant's culpability. "A defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer." *Mesle*, 615 F.3d at 1092 (citation modified). The requirement of intentional failure means that a defendant "cannot be treated as culpable simply for having made a conscious choice not to answer; rather, to treat a failure to answer as culpable, the movant must have acted with bad faith." *Id.* A finding of bad faith is appropriate when a defendant's conduct indicates an "intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process." *Id.* at 1093. Where a defendant is legally sophisticated—i.e., represented by counsel—a reviewing court may, in its discretion, assume intentionality. *Id.* But such an assumption is not required. *See Idaho Golf Partners, Inc. v. Timberstone Mgmt. L.L.C.*, No. 14-cv-00233-BLW, 2015 WL 1481396, at *4 (D. Idaho Mar. 31, 2015). The Court "retains the discretion (but not the obligation) to infer intentionality from the actions of a legally sophisticated party and to thereby find culpability." *Id.*

There is no dispute that View was properly served on November 6, 2024 (Dkt. 4); View's legal department learned of the lawsuit on February 2, 2025 (Dkt. 13-1 at 3); and View failed to answer or otherwise appear in the action until June 11 (Dkt. 12). Given that View received actual notice of the action on February 2, the Court must next consider whether it intentionally failed to answer.

View maintains that it is not a sophisticated party and thus the less stringent *TCI Group* standard should apply (Dkt. 13-1 at 6). In support, it states that, at the time of service, it was in the process of emerging from bankruptcy that resulted in layoffs and significantly restricted its operations and office locations, and its legal department was delayed in receiving the summons and complaint (*id.* at 3, 6). GBAD argues View is a legally sophisticated party because it has an in-house legal team and "is no stranger to the legal process," pointing to a list of seventeen cases in which View has been a party since 2015 (Dkt. 15 at 9–10).

Despite View's assertion to the contrary (Dkt. 13-1 at 6), the Court agrees with GBAD that View is subject to the heightened standard imposed on sophisticated parties represented by legal counsel. But this heightened standard does not extinguish the intentionality requirement with respect to legally sophisticated entities; it merely "grants this Court discretion to assume culpability based solely on Defendant's failure to answer." *Garner v. Wells Fargo Home Mortg., Inc.*, No. 10-cv-266-BLW, 2011 WL 2413841, at *2 (D. Idaho June 9, 2011); *see also Mesle*, 615 F.3d at 1092 (holding intentionality "*may* be assumed" for legally sophisticated parties) (emphasis added). Although the Court recognizes its discretion to assume culpability solely based on View's failure to answer, it will not do so considering the policy favoring deciding cases on the merits, and instead considers whether View acted intentionally.

View explains the nearly four-month delay between learning of the case and entering its appearance is excusable because, by the time View was aware this suit had been filed, the default had already been entered (Dkt. 17 at 2). Thus, "View was required to do more than merely file an answer or enter an appearance"—it was "required to raise a meritorious defense as part of a motion to set aside" (*id.*).

**MEMORANDUM DECISION AND ORDER – 5**

The Court finds that View did not intentionally fail to respond to the complaint. There is no evidence that View's conduct was willful or done in bad faith. Nor is there evidence of malicious intent. Rather, View's failure to answer prior to entry of default resulted from excusable neglect. Furthermore, upon View's counsel learning of the case, it acted diligently to investigate the claims, retain outside counsel, and respond to the action (Dkt. 13-1 at 3). This conduct evidences an intent to contest the case on the merits and undermines a finding of bad faith. Accordingly, this factor weighs in favor of setting aside the entry of default.

## B.    Meritorious Defense

The second factor looks at whether defendant has a "potentially meritorious defense" to the action. *TCI Grp.*, 244 F.3d at 699. A party seeking to vacate entry of default must present specific facts that would constitute a defense, but the burden is not extraordinarily heavy. *Id.* at 700. "All that is necessary to satisfy the 'meritorious defense' requirement is to allege sufficient facts that, if true, would constitute a defense." *Mesle*, 615 F.3d at 1094. The Court need not determine the truth of the factual allegations on a motion to set aside entry of default, as such question is properly the subject of later litigation. *Id.* This factor weighs in favor of setting aside default when "some possibility" exists that the outcome of the suit after a full trial would differ from the result reached by the default. *Hawaii Carpenters' Tr. Funds v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986).

View asserts that it has a meritorious defense that should be decided on the merits (Dkt. 13-1 at 6). More specifically, View contends that the smart window panels installed at the Boise Centre East which GBAD claims are defective "may have been damaged either during installation by inexperienced workers or by a subsequent third party" (*id.* at 7). It also notes that it is ready and willing to perform under its contractual obligations and in line with its limited warranties by delivering replacement smart window panels or relevant parts," but that GBAD "has not allowed

[it] to investigate the failures and has refused to accept delivery from View" (*id.* at 7). This allegation would be a potential defense to GBAD's breach of contract, breach of the implied covenant of good faith and fair dealing, breach of express warranty, breach of the implied warranty of fitness for a particular purpose/merchantability, products liability claims, as well as View's alleged violation of the Idaho Consumer Protection Act (Dkt. 17 at 5–6). View also maintains GBAD's failure and refusal to accept its offer to replace defective windows is relevant to its failure to mitigate defense (*id.*). GBAD disagrees, classifying View's "meritorious defense" as "entirely speculative" (Dkt. 15 at 16). But View is not required, as GBAD suggests, to present evidence in support of its defenses. Rather, at this stage, View's allegations are accepted as true. *See Mesle*, 615 F.3d at 1094.

GBAD also argues View's defense that the sealing defect in GBAD's windows may be defective because of installation or subsequent damages from an unknown party contradicts positions that "people in the know at View have formally taken with respect to these known window defects in this first-generation product" (Dkt. 15 at 17). According to GBAD, View has been aware of the defective sealing component for years, as evidenced by a Cease-and-Desist Order entered by the SEC against View in 2023, which provides that View learned of the sealing defect in 2016, acknowledged that the windows were defective due to a "sealing component manufactured by a third-party supplier for some of its windows," and, accordingly, stopped using the defective seal for its windows (*id.*). Thus, GBAD maintains that "in 2019, View knew that its windows had a sealing defect, and such defect was caused by View's third-party supplier of the windows"—not by improper installation or by some unknown third party damaging the windows after installation (*id.*). View retorts that "merely because window seals have been a problem, it does not mean that they were the problem on this project" (Dkt. 17 at 6). The Court agrees. View

MEMORANDUM DECISION AND ORDER – 7

installed seventy-two window panels in 2016 in Boise Centre East (Dkt. 1 ¶¶ 19, 31). Of those seventy-two windows, only thirteen have failed (*id.* ¶ 47). Without the benefit of discovery, the Court cannot conclude that the sole cause of the defective window panels was a production flaw.

Finally, GBAD claims that "View's communications to GBAD confirm that the defects occurring in GBAD's window system are the same sealing defects that View has been aware of for years" (Dkt. 15 at 18) ("We have seen them from time to time and are considered a production flaw that we as a company take ownership of.") ("From a high level, there was a time when we were using a sealer that would uncommonly have microscopic holes in it after production of the unit. This microscopic hole lets in air, and in some cases water, between the pains (sic) that over time corrode the electrochromic coating on surface 2."). But these statements merely indicate that the window defects *may be* related to a problem with the sealer used by View. Because there is "some possibility" that the outcome after trial would be different from the outcome on default, the Court concludes that these allegations are sufficient to warrant setting aside the entry of default.

## C.    Prejudice

The third and final factor is prejudice. "To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case." *TCI Grp.*, 244 F.3d at 701. Instead, courts must look to whether the delay has hindered the plaintiff's ability to pursue his or her claim, such as by "loss of evidence" or "increased difficulties of discovery." *Id.*

GBAD argues that View's failure to participate in litigation for seven months has already resulted in prejudice to it, as it "deprived it of the ability to timely pursue and obtain the relief it needs to counter the problems this product is causing in GBAD's business operations" (Dkt. 15 at 21). Without citing any authority, GBAD contends that granting View's motion to set aside entry of default would "delay resolution" and "prolong a state of operational uncertainty that continues to damage GBAD's reputation, reduce bookings, and cost real business opportunities" (*id.*).

MEMORANDUM DECISION AND ORDER – 8

GBAD misapprehends the nature of the prejudice prong. The question at this stage is not whether View's failure to appear has already caused GBAD to incur a burden or expense. Rather, the question is whether GBAD's "ability to pursue [its] claim will be hindered" in the future as a result of View's previous failure to appear. *TCI Grp.*, 244 F.3d at 701. As the case is adjudicated on the merits, GBAD may be able to seek compensation for the costs it incurred for its damaged reputation, reduced bookings, and lost business opportunities. This past harm, however, does not constitute prejudice warranting a refusal to set aside the default. *See Coen Co. v. Pan Int'l, Ltd.*, 307 F.R.D. 498, 504 (N.D. Cal. 2015). Moreover, the loss by GBAD of what might be considered a speedier resolution by way of a default judgment is not in and of itself indicative of any prejudice. *Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1225 (9th Cir. 2000) (no prejudice simply because a party loses a quick victory due to an opponent's procedural default and must litigate on the merits). Furthermore, GBAD has not established that View's failure to appear resulted in the loss of evidence, hampered its ability to conduct discovery, or thwarted its ability to obtain relief in the future. Finally, the Court notes that, where possible, a case should be decided on the merits, as judgment by default is a drastic event requiring extreme circumstances. *See Mesle*, 615 F.3d at 1091. Extreme circumstances are not present in this case, and GBAD will not be prejudiced by setting aside the entry of default. Accordingly, this factor also weighs in favor of setting aside default.

View has shown that it was not culpable for its late filing, that it has meritorious defenses, and that GBAD will not be prejudiced if the Court sets aside the entry of default. Accordingly, the Court finds good cause to set aside the entry of default.

**MEMORANDUM DECISION AND ORDER – 9**

## IV.    ORDER

**IT IS ORDERED that:**

1.    Defendant View Operating Corporation's Motion to Set Aside Default (Dkt. 13) is **GRANTED**.

2.    The Clerk's Entry of Default (Dkt. 9) is **VACATED**.

3.    Plaintiff Greater Boise Auditorium District's Motion for Entry of Default Judgment (Dkt. 19) is **DENIED AS MOOT**.

4.    Defendant View Operating Corporation is ordered to respond to Plaintiff Greater Boise Auditorium District's Complaint (Dkt. 1) within **twenty-one (21) days** from the entry of this Order.

DATED: March 17, 2026

Amanda K. Brailsford
U.S. District Court Judge